**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TYREEK JACKSON,                         :
   Plaintiff                              :
                                         :      No. 1:22-cv-00845
   v.                                     :
                                         :      (Judge Kane)
BERNADETTE MASON, et al.,               :
   Defendants                             :

**MEMORANDUM**

Pending before the Court is Defendants' motion to dismiss the complaint filed

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 5.)  Also

pending before the Court is pro se Plaintiff Tyreek Jackson ("Jackson")'s motion seeking the

appointment of counsel.  (Doc. No. 8.)  For the reasons set forth below, the Court will grant

in part and deny in part Defendants' motion and will deny Plaintiff's motion.

I.       **BACKGROUND**

Plaintiff, who is a state prisoner in the custody of the Pennsylvania Department of

Corrections ("DOC"), is presently incarcerated at State Correctional Institution Rockview

("SCI Rockview") in Bellefonte, Pennsylvania.  (Doc. No. 9.)  He originally filed his

complaint in the Court of Common Pleas of Schuylkill County, Pennsylvania.  (Doc. No. 1-1

at 4-20.)  The action was removed by Defendants to this District Court on May 27, 2022.

(Doc. No. 1 (containing Defendants' Notice of Removal).)

In his complaint, Plaintiff asserts violations of the First and Eighth Amendments to

the United States Constitution, as well as a state law claim for negligence.  (Doc. No. 1-1 at

2-10.)  Named as Defendants are seven (7) individuals all of whom appear to have been

employed by the DOC and worked at State Correctional Institution Mahanoy ("SCI

Mahanoy") in Frackville, Pennsylvania during the period of time relevant to Plaintiff's

complaint.  More specifically, Plaintiff has named Bernadette Mason ("Mason"), the

Superintendent, and six (6) correctional officers: Harris; Evans; Davis; Cobian; John Doe 1;

and John Doe 2 (collectively, "Defendants").  (Id. at 4-5.)  Plaintiff's complaint sets forth the

following allegations against Defendants.

Plaintiff alleges that, in August of 2019, he was authorized to purchase an additional

"[f]oot-[f]ocker for the purpose of storing his [l]egal [m]aterial for his" pending criminal and

civil cases.  (Id. at 5.)  Plaintiff claims that this authorization came from Warden Lamas, the

warden at State Correctional Institution Chester.  (Id.; id. at 12 (attaching to his complaint a

memorandum from Warden Lamas, wherein Plaintiff was approved to purchase an additional

foot-locker for the purpose of storing legal material for his pending criminal and civil

cases).)

Plaintiff alleges that, on December 29, 2021, he was placed in the "RHU/DTU" at

SCI Mahanoy for medical reasons and that he remained there until January 14, 2022.  (Id. at

5.)  Plaintiff further alleges that, while he was housed there, the Security Department at SCI

Mahanoy "retrieved" his property and had possession of it until January 12, 2022.  (Id.)

Plaintiff claims, "[o]n information and belief[,]" that all property that is "packed"

must be inventoried by a staff member in order to ensure that all of the contents are recorded

and, further, if the prisoner is not present to participate in this process, then two (2) staff

members must inventory and pack the prisoner's property and must state the reason why the

prisoner was not able to pack and inventory his own property.  (Id.)  In connection with this

alleged process, Plaintiff claims that Defendants Evans, John Doe 1, and John Doe 2 packed

his property on December 29, 2021.  (Id. (claiming that he "NEVER" inventoried his

property because the Security Department at SCI Mahanoy had his belongings).)

Plaintiff alleges that, on January 14, 2022, he was transported from SCI Mahanoy to Lehigh Valley Hospital Cedar Crest to have surgery.  (Id. at 6.)  He was returned to SCI Mahanoy on or about January 21, 2022.  (Id.)  Plaintiff alleges that, upon his return, he was given some of his property by the RHU Lieutenant with a confiscation slip enclosed.  (Id.; id. at 13 (attaching to his complaint a "Confiscated Items Receipt (Inmate)[,]" which is dated January 11, 2022).)[1]  In seeming connection with this confiscation slip, Plaintiff alleges that his second foot-locker, which had previously been authorized by Warden Lamas and which contained all of his legal materials pertaining to his pending criminal and civil cases, was "missing[.]"  (Id. at 6.)

Because of this, Plaintiff alleges that he "wrote several request[s]" to staff, Defendant Mason, the Security Department, and the DOC's Central Office.  (Id.; id. at 14 (attaching to his complaint a letter that is addressed to Defendant Mason and identifies the various legal material that was allegedly "lost" by the Security Department at SCI Mahanoy).)  Following these written requests, Plaintiff alleges that, on January 24, 2022, he submitted an official inmate grievance concerning his property.  (Id. at 6; id. at 15-16 (attaching to his complaint an "Official Inmate Grievance[,]" wherein he raises several issues regarding his property at SCI Mahanoy, including his missing foot-locker of legal material).)  Plaintiff alleges that Defendant Cobian responded to his grievance, stating that an "extra" foot-locker was removed from his cell, but that nothing was missing.  (Id. at 6.)  Plaintiff expounds on this

---

[1]  It is unclear from this document alone what property was allegedly confiscated.  (Doc. No. 1-1 at 13.)  The section of this document entitled "Item(s) Confiscated" is largely blank with only a date and perhaps a set of initials listed thereunder.  (Id.)

3

response and explains that Defendant Cobian explained that officers removed Plaintiff's belongings from one foot-locker and placed them into the other foot-locker.  (Id.; id. at 17 (containing the "Initial Review Response[,]" wherein Defendant Cobian states, in pertinent part, that the "officers" who transported Plaintiff's belongings to the RHU were interviewed and explained that, although they removed an "extra" foot-locker from his belongings, they placed everything into one foot-locker and, thus, "nothing was confiscated").)  Plaintiff appears to claim that Defendants Harris, Evans, and John Doe 1 were the individuals who removed the content from his "extra" foot-locker.  (Id. at 6.)

Plaintiff alleges that subsequently, on February 14, 2022, Defendant Cobian summoned him to her office and "admitted" that "all" of his legal material was "lost" by her staff and that he could have "the Courts contact her to verify" this fact.  (Id.)  Plaintiff further alleges that Defendant Cobian stated that, because Plaintiff had received a deadline from the Pennsylvania Supreme Court of February 18, 2022, the Supreme Court could contact her to verify that his legal material was lost and/or destroyed.  (Id. at 6-7; id. at 20 (attaching to his complaint what purports to be a letter from his attorney that identifies a February 18, 2022 deadline, concerning the filing of a petition for allowance of appeal to the Pennsylvania Supreme Court for review of an underlying Post Conviction Relief Act Petition).)  Although Plaintiff appealed Defendant Cobian's initial response to the Facility Manager, his appeal was denied by Defendant Mason.  (Id. at 7; id. at 18-19 (attaching to his complaint his handwritten appeal to the Facility Manager/Warden, as well as Defendant Mason's response thereto).)  Similarly, Plaintiff alleges that, although he appealed his grievance to Final

Review, it was also denied.[2]  (Id. at 7.)  Finally, Plaintiff alleges that, during the course of

exhausting his grievance, he spoke to Defendant Cobian, who stated that "the reason why

[his] property went missing is because [he] likes to file grievances and lawsuits against her

fellow staff members."  (Id.)

In connection with all of these allegations, Plaintiff asserts that his property was

never returned to him and that he was never reimbursed for it.  (Id.)  As a result, he filed this

action, asserting three (3) counts in the complaint.[3]  (Id. at 8-9.)  In count one, Plaintiff

asserts a state law claim for negligence on the basis that Defendants Evans, Harris, Cobian,

Mason, and John Doe 1 and 2 (i.e., all Defendants minus Defendant Davis) had a duty to

handle his property with care while it was in their custody, but failed to do so when they

negligently lost his property and, thus, caused injury to him.  (Id. at 8 (claiming in count one

that he suffered "serious injury, pain, suffering[,] and emotional damage").)  In count two,

Plaintiff asserts an Eighth Amendment claim based upon the alleged "failure to

investigate/intervene or prevent" in that "Defendants Mason, Cobian, Harris, Evans, Davis et

al." failed to enforce and/or train their "low ranking employees" and/or "having [a]

practice/custom of handling prisoners['] personal property negligently in violation of his . . .

constitutional rights."  (Id. at 8-9.)  Finally, in count three, Plaintiff asserts a First

Amendment claim against all Defendants based upon their handling of his property, and their

---

[2]  Unlike his other grievance documentation, Plaintiff has neither attached a copy of the appeal he submitted to Final Review nor the response he allegedly received denying his appeal to Final Review.  He also sets forth no allegations as to why this documentation is not attached to his complaint.

[3]  Plaintiff's complaint does not explicitly separate his three (3) claims into counts (Doc. No. 1-1 at 8-9), but for ease of reference and the sake of clarity, the Court has done so here.

failure to adhere to DOC policy and procedure, because he had filed past grievances and lawsuits against the DOC and medical department staff members.  (Id. at 9.)

As for relief, Plaintiff seeks compensatory damages against each Defendant in the amount of $50,000 for "physical pain and suffering and emotional injuries[.]"  (Id.)  He also seeks attorney fees, the costs of litigation, and any other relief deemed suitable under law. (Id.)

In response to the allegations in the complaint, Defendants have filed a collective motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 5), as well as a supporting brief (Doc. No. 6).  Although Plaintiff did not file a brief in opposition to their motion to dismiss, he filed a letter objecting to the removal of his complaint to federal court (Doc. No. 7) and a motion seeking the appointment of counsel (Doc. No. 8).  Thus, the parties' pending motions (Doc. Nos. 5, 8) are ripe for the Court's resolution.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based

upon these documents." <u>See</u> <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing

<u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of <u>pro se</u> prisoner litigation, the court must be mindful that a document

filed <u>pro se</u> is "to be liberally construed." <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A

<u>pro se</u> complaint, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

## III.   DISCUSSION

### A.   Removal

In their Notice of Removal, Defendants assert that this action is removable to this District

Court pursuant to 28 U.S.C. § 1441 because Plaintiff has asserted violations of his constitutional

rights, as contemplated by 42 U.S.C. § 1983 ("Section 1983"), while incarcerated at SCI

Mahanoy in Frackville, Pennsylvania.  (Doc. No. 1.)  Although Plaintiff did not file a motion to

remand this action to state court pursuant to 28 U.S.C. § 1447(c) on the basis that the Court lacks

jurisdiction over his claims, he filed a letter with the Court, wherein he "object[s]" to this action

being "transferred to federal court."  (Doc. No. 7 at 1.)  He objects on the basis that his

"complaint is clear cut, a simple lost/destroyed property by guards at [SCI] Mahanoy[.]"  (<u>Id.</u>)

He also appears to object on the basis that he does "not have the money, time, nor resources to

go up against the lawyers for the [DOC]."  (<u>Id.</u>)  Having reviewed Plaintiff's complaint, and the

parties' respective arguments regarding removal, the Court agrees with Defendants that it has

jurisdiction over Plaintiff's claims.

Section 1441 of Title 28 governs removable actions and states, in pertinent part, as follows:

> **(a) Generally.**--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, <u>may be removed</u> by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending

<u>See</u> 28 U.S.C. § 1441(a) (emphasis added).

Here, Plaintiff's state court action in Schuylkill County expressly includes claims under the First and Eighth Amendments to the United States Constitution.  (Doc. No. 1-1 at 8-9.)  The Court has original jurisdiction over these claims pursuant to 28 U.S.C. § 1331.  <u>See</u>  28 U.S.C. § 1331 (providing that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

Plaintiff's state court action also expressly includes a state law claim for negligence arising out of the same events and circumstances.  (Doc. No. 1-1 at 8.)  The Court has supplemental jurisdiction over this related state law claim pursuant to 28 U.S.C. § 1367.  <u>See</u> 28 U.S.C. § 1367 (providing that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

As a result, the Court concludes that it has original jurisdiction over Plaintiff's federal claims and supplemental jurisdiction over Plaintiff's related state law claims and, thus, remand is not required here.  <u>See</u> <u>Green v. Am. Online (AOL)</u>, 318 F.3d 465, 470 (3d Cir. 2003) (concluding that there was "a clear invocation of federal question jurisdiction under 28 U.S.C. §

1331[,]" where the operative pleading asserted, <u>inter</u> <u>alia</u>, a violation of the First Amendment to the United States Constitution and, as a result, removal was proper under 28 U.S.C. § 1441 (citation omitted)); <u>Collura v. City of Philadelphia</u>, 590 F. App'x 180, 184 (3d Cir. 2014) (unpublished) (concluding that removal was proper under 28 U.S.C. § 1441, where the district court had original jurisdiction over the plaintiff's First, Fourth, and Fourteenth Amendment claims, and supplemental jurisdiction to consider his related state law claims (citation and internal citations omitted)).[4]

## B.    Plaintiff's Federal Claims

Because Plaintiff seeks money damages for asserted violations of his constitutional rights against Defendants, employees of a Pennsylvania state agency (<u>i.e.</u>, the DOC), the Court construes Plaintiff's federal claims as being filed pursuant to the provisions of Section 1983.  <u>See</u> <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 130 (2017) (explaining that Section 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights").  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[4]  Throughout its discussion, the Court has cited to a few non-precedential opinions ("NPOs") from the Third Circuit.  The Third Circuit has acknowledged that its NPOs may contain persuasive reasoning or factual similarity and, thus, may be referred to as a paradigm of legal analysis.  <u>See</u> <u>New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld</u>, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an NPO is "as persuasive as its reasoning"); <u>Drinker by Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an NOP based on "factual similarity" and "look[ing] to the [NPO] as a paradigm of the legal analysis").  The Court has, therefore, used these NPOs as a paradigm of legal analysis.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, Plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### 1. Personal Involvement

In their motion to dismiss, Defendants argue that Defendants Davis, Mason, and Cobian should be dismissed from this action due to their lack of personal involvement in the asserted constitutional violations.  (Doc. No. 6 at 4-5.)  The Court agrees, but only in part.

### a. Defendant Davis

Plaintiff's complaint names Defendant Davis as a correctional officer who works at SCI Mahanoy.  (Doc. No. 1-1 at 4.)  Defendants argue that there are no factual allegations in Plaintiff's complaint regarding Defendant Davis.  (Doc. No. 6 at 4.)  The Court agrees. Although Davis has been named as a Defendant in the complaint (id.), he has not been mentioned anywhere in the "FACTS OF THE CASE" section of the complaint (Doc. No. 1-1 at 5-7).  In other words, there is a complete absence of facts in the complaint that would give rise to a plausible inference that Defendant Davis was personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights.  Without such allegations of personal involvement, however, liability cannot be imposed against Defendant Davis under Section 1983.  As a result, the Court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendant Davis and, thus, any Section 1983 claims against Defendant Davis will be dismissed.

### b. Defendant Cobian

Plaintiff's complaint names Defendant Cobian as a correctional officer who works at SCI Mahanoy.  (Doc. No. 1-1 at 5.)  Defendants argue that Plaintiff is attempting to impose Section 1983 liability against Defendant Cobian based upon her alleged role in the grievance process at SCI Mahanoy, not based upon any personal involvement in the underlying asserted constitutional

deprivations.  (Doc. No. 6 at 4-5.)  The Court, however, is unpersuaded by Defendants' argument.

Generally speaking, the mere filing of a grievance is insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation.  See Rode, 845 F.2d at 1207-08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing).  In addition, grievances that complain of events that have already occurred and that are in the past are not sufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations.  See Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where "plaintiff's grievance only reported violations that had occurred in the past").

Under certain circumstances, however, a grievance may be sufficient to place a defendant on notice of continued wrongdoing and, thus, may show actual knowledge of and acquiescence in the events that form the basis of the plaintiff's asserted constitutional claims.  See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court had failed to consider grievances pertaining

to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).

Thus, according to this authority, merely responding to an inmate's grievance that complains of events that have already occurred does not constitute the knowledge and acquiescence that is necessary to show a defendant's personal involvement in a Section 1983 action. When the Court applies that principle here, it appears that Defendant Cobian responded to Plaintiff's grievance after his property had already been, allegedly, lost or destroyed. For that reason, the Court is generally inclined to accept the premise of Defendants' argument that Plaintiff has failed to show her personal involvement in this action based upon her alleged role in the grievance process at SCI Mahanoy.

However, Defendants' argument fails to account for Plaintiff's specific allegation in the complaint that, during the course of exhausting his grievance, he "spoke" to Defendant Cobian who "stated that the reason why [his] property went missing is because [he] likes to file grievances and lawsuits against her fellow staff members." (Doc. No. 1-1 at 7.) The Court finds that this allegation is sufficient to show Defendant Cobain's personal involvement in this Section 1983 action, wherein Plaintiff has asserted a First Amendment retaliation claim against her. (Id. at 9.)

Accordingly, the Court finds that Defendants have not shown that the complaint fails to allege the personal involvement of Defendant Cobian with respect to the Section 1983 claims that Plaintiff has asserted against her. As a result, the Court will deny their motion to dismiss to

the extent that they seek dismissal of such claims against Defendant Cobian.

### c.   Defendant Mason

Defendant Mason, who has been named as the Superintendent of SCI Mahanoy in

Plaintiff's complaint, is a supervisory official.  (Doc. No. 1-1 at 4.)  In the context of Section

1983, the Third Circuit has recognized two (2) theories of supervisory liability.  See A.M. ex rel.

J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  Under one theory, a

supervisor can be held liable if it is shown that he, "with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm."  See id. (citation and internal quotation marks omitted) (alteration in

original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).  Under the other theory, a

supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights,

directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in

his subordinates' violations."  See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, the Court finds that there are no well-pleaded allegations in the complaint that

would raise the plausible inference that Defendant Mason is liable to Plaintiff under either one of

these theories of supervisory liability.  Indeed, there are no allegations to show that Defendant

Mason participated, directed, or knew of and acquiesced in, the handling of Plaintiff's property

at SCI Mahanoy or that Defendant Mason was deliberately indifferent to the consequences of a

policy, practice, or custom that she had established and maintained.  While the complaint

contains conclusory allegations regarding a "practice/custom of handling prisoners['] property"

(Doc. No. 1-1 at 9), the complaint does not contain any specific facts regarding a practice or

custom nor does it contain any specific facts that Defendant Mason knew of consequences

15

flowing from such a practice or custom yet disregarded those consequences.  Moreover, the law is clear that such conclusory allegations are not entitled to the assumption of truth.  See Ashcroft, 556 U.S. at 679 (stating further that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler, 578 F.3d at 210-11 (explaining that while a court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)).

Finally, to the extent that Plaintiff's complaint alleges that he wrote a letter to Defendant Mason after his property was allegedly lost or destroyed at SCI Mahanoy (Doc. No. 1-1 at 6, 14), the Court finds that this allegation alone does not support a plausible inference that Defendant Mason played an affirmative role in the asserted deprivation of Plaintiff's constitutional rights. See Chavarriaga, 806 F.3d at 222-23 (explaining that a defendant's liability cannot be predicated on a respondeat superior theory of liability).

Accordingly, for all of these reasons, the Court finds that the complaint fails to plausibly allege personal involvement on the part of Defendant Mason.  As such, the Court will grant Defendants' motion to dismiss on this basis, and Plaintiff's Section 1983 claims against Defendant Mason will be dismissed.

### 2.    Plaintiff's First Amendment Claim

In the complaint, Plaintiff asserts a violation of his rights under the First Amendment to the United States Constitution on the basis that all of the Defendants retaliated against him for engaging in constitutionally protected activity.  (Doc. No. 1-1 at 9.)  Defendants argue, however, that the complaint fails to state a retaliation claim upon which relief can be granted because

16

Plaintiff has not alleged a necessary element of this claim.  (Doc. No. 6 at 8-9.)  The Court, however, is unpersuaded.

In order for a prisoner-plaintiff to plausibly state a First Amendment retaliation claim, he must allege three (3) elements.  First, he must allege that he was engaged in constitutionally protected conduct.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, he must allege "that he suffered some 'adverse action' at the hands of prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This second requirement is satisfied by showing that the action "'was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'"  See id. (quoting Allah, 229 F.3d at 225).  Third, he must allege that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See id. at 333 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  If a prisoner-plaintiff establishes a prima facie case of retaliation, the burden shifts to prison officials to show by a preponderance of the evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See id. at 334.  If the prison officials can make this showing, it defeats the prisoner-plaintiff's retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

Here, Defendants do not dispute, and appropriately so, that the filing of lawsuits and prison grievances constitute activity protected by the First Amendment.  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (recognizing that a prisoner-plaintiff engages in constitutionally protected activity when he files a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d

Cir. 2002) (explaining "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223-25 (3d Cir. 2000) (concluding that the prisoner-plaintiff had stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials at two (2) Pennsylvania state correctional institutions).

Instead, Defendants argue that Plaintiff's complaint has failed to plausibly allege a causal connection between such protected activity (i.e., the filing of grievances and lawsuits against prison officials) and the alleged retaliatory action at SCI Mahanoy (i.e., the confiscation of his personal property). (Doc. No. 6 at 9.) As set forth above, in order for Plaintiff to state a prima facie case of retaliation, he must allege that the constitutionally protected activity he engaged in was "'a substantial or motivating factor'" for the adverse action that he allegedly suffered. See Rauser, 241 F.3d at 333 (quoting Mount Healthy, 429 U.S. at 287). Because "motivation is almost never subject to proof by direct evidence," a prisoner-plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." See Watson, 834 F.3d at 422. The prisoner-plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted).

Here, however, Plaintiff's complaint contains an allegation that, during the course of exhausting his grievance at SCI Mahanoy, he "spoke" to Defendant Cobian who "stated that the reason why [his] property went missing is because [he] likes to file grievances and lawsuits

against her fellow staff members."  (Doc. No. 1-1 at 7.)  The Court finds that this allegation

raises a plausible inference of a retaliatory motive on the part of Defendant Cobian.  The Court

further finds that, because Defendants have not addressed this allegation in connection with their

motion to dismiss, they have not met their burden of showing that no retaliation claim has been

stated here.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)

(explaining that, "under Rule 12(b)(6)[,] the defendant has the burden of showing no claim has

been stated"); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir.1980) (concluding that the district

court had committed reversible error where it had "shifted to the plaintiffs the burden which

properly was the Government's on a motion to dismiss under Fed .R. Civ. P. 12(b)(6) and

deprived the plaintiffs of the procedural safeguards to which they were entitled").  The Court

will, therefore, deny their motion to dismiss Plaintiff's First Amendment retaliation claim.

### 3.    Plaintiff's Eighth Amendment Claim

In the complaint, Plaintiff asserts a violation of his rights under the Eighth Amendment to

the United States Constitution.  (Doc. No. 1-1 at 8-9.)  Defendants argue that the complaint fails

to state an Eighth Amendment claim upon which relief can be granted because it has been "pled

in conclusory fashion[,]" and because it fails to allege any cruel and unusual punishment.  (Doc.

No. 6 at 7-8.)  The Court agrees with Defendants' argument.

"The Eighth Amendment, made applicable to the States through the Fourteenth

Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576

U.S. 863, 876 (2015).  As explained by the United States Supreme Court, the Constitution "does

not mandate comfortable prisons, and only those deprivations denying the minimal civilized

measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment

violation." <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]" <u>See</u> <u>Porter v. Pennsylvania Dep't of Corr.</u>, 974 F.3d 431, 441 (3d Cir. 2020) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'" <u>See</u> <u>id.</u> (quoting <u>Farmer</u>, 511 U.S. at 834). Under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'" <u>See</u> <u>id.</u> (quoting <u>Farmer</u>, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety. <u>See</u> <u>Tillman v. Lebanon Cnty. Corr. Facility</u>, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing <u>DeShaney v. Winnebago Co. Dep't of Social Svcs.</u>, 489 U.S. 189, 199-200 (1989))); <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that

20

is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38)).

Here, the Court finds that Plaintiff's complaint does not plausibly allege a deprivation of his constitutional rights under the Eighth Amendment.  More specifically, his complaint does not show that the alleged loss or destruction of his property caused him the denial of life's necessities, such as food, clothing, shelter, medical care, or reasonable safety.  See Farmer, 511 U.S. at 832 (stating that prison officials "must provide humane conditions of confinement[,]— that is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care" and that prison officials must "take reasonable measures to guarantee the safety of the inmates" (citation and internal quotation marks omitted)).

Additionally, Plaintiff's complaint does not show that any of the Defendants acted with deliberate indifference to an excessive risk of harm to his health and/or safety, which accompanied such alleged loss or destruction of his property.  See id. at 837 (holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

21

Thus, for all of these reasons, the Court concludes that Plaintiff's complaint has not alleged a plausible deprivation of his constitutional rights under the Eighth Amendment. Because "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation[,]" see Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and internal quotation marks omitted), the Court further concludes that the allegations in Plaintiff's complaint concerning the alleged loss or destruction of his personal property do not give rise to a viable Eighth Amendment claim. See Durham v. Dep't of Corr., 173 F. App'x 154, 156 (3d Cir. 2006) (unpublished) (dismissing prisoner-plaintiff's Eighth Amendment claim on the basis that prison guards had seized his property, i.e., religious paintings in his cell, and stating that "such allegations do not give rise to an Eighth Amendment violation"); Thomas v. New Mexico Corr. Dep't, 272 F. App'x 727, 729-30 (10th Cir. 2008) (unpublished) (concluding that the prisoner-plaintiff's claim that he was subjected to cruel and unusual punishment, which was based upon allegations that he was deprived of his personal belongings, was "not sufficiently grave to rise to the level of an Eighth Amendment violation"). As a result, the Court will dismiss Plaintiff's Eighth Amendment claim.

### 4.      Plaintiff's Fourteenth Amendment Claim

To the extent that Plaintiff's complaint can be liberally construed as asserting a Fourteenth Amendment claim based upon allegations that his property was allegedly lost or destroyed at SCI Mahanoy without procedural due process of law (Doc. No. 1-1), the Court agrees with Defendants that this claim fails (Doc. No. 6 at 7). The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. XIV, § 1. In order to determine whether procedural due

22

process requirements apply, the Court must first consider whether the "property" interest

asserted is one that is protected by the Fourteenth Amendment.   See Bd. of Regents of State

Colleges v. Roth, 408 U.S. 564, 570-71 (1972) (stating that, in order "to determine whether due

process requirements apply in the first place, [courts] must look not to the weight but to the

nature of the interest at stake[,]" and thus, courts "must look to see if the interest is within the

Fourteenth Amendment's protection of liberty and property" (internal citation and quotation

marks omitted)).  The nature of the interest asserted here is that prison officials deprived Plaintiff

of personal property that was in his cell.

It is well-established, however, that the negligent deprivation of property by a state

official does not give rise to a cognizable due process claim.  See Daniels v. Williams, 474 U.S.

327, 328 (1986) (providing that the negligent acts of state officials causing unintentional loss of

or injury to life, liberty, or property do not violate the Due Process Clause of the Fourteenth

Amendment); Allen v. Cooper, 140 S. Ct. 994, 1004 (2020) (stating that "a merely negligent act

does not 'deprive' a person of property" within the meaning of the Due Process Clause (citing

Daniels, 474 U.S. at 328)); Johnson v. City of Philadelphia, 975 F.3d 394, 402 (3d Cir. 2020)

(stating that "'the Due Process Clause is simply not implicated by a negligent act of an official

causing unintended loss of or injury to life, liberty, or property'" (quoting Daniels, 474 U.S. at

328) (emphasis in original)).

It is further established that the intentional deprivation of property by state officials also

does not give rise to a cognizable due process claim if the plaintiff has an adequate post-

deprivation remedy available under state law.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984)

(providing that "an unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation [sic] remedy for the loss is available"); Allen, 140

S. Ct. at 1004 (explaining that a deprivation of property "must be intentional, or at least reckless,

to come within the reach of the Due Process Clause[,]" and that "[a] State cannot violate that

Clause unless it fails to offer an adequate remedy for [a deprivation], because such a remedy

itself satisfies the demand of 'due process'" (citation and internal citation omitted)).

With respect to post-deprivation remedies in the prisoner context, the United States Court

of Appeals for the Third Circuit has held that the DOC's administrative grievance system

constitutes an adequate post-deprivation remedy.  See, e.g., Monroe v. Beard, 536 F.3d 198, 209-

10 (3d Cir. 2008) (finding that prison official-defendants who had confiscated legal materials

belonging to the prisoner-plaintiffs did not violate the Due Process Clause, in part, because the

DOC's grievance procedure provided an adequate post-deprivation remedy); Tillman, 221 F.3d

at 422 (finding that the prisoner-plaintiff had an adequate post-deprivation remedy in the county

correctional facility's grievance program, thereby satisfying due process).

In addition to the DOC's grievance system providing an adequate post-deprivation

remedy, it has also been held that Pennsylvania tort law provides an adequate remedy for prison

officials' unlawful deprivation of inmate property.  See 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3)

(waiving sovereign immunity for negligent acts related to the "care, custody or control of

personal property in the possession or control of Commonwealth parties . . ."); Mayo v.

Hollibaugh, No. 18-cv-1492, 2020 WL 1467257, at *6 (M.D. Pa. Mar. 26, 2020) (explaining that

even if the prison's grievance procedures "were constitutionally inadequate, [the prisoner-

plaintiff] could take advantage of state tort law which may serve as an adequate post-deprivation

remedy" (citing 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3))); <u>Hernandez v. Corr. Emergency Response Team</u>, 771 F. App'x 143, 145 (3d Cir. 2019) (unpublished) (explaining that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would [still] provide an adequate remedy" (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)).

Applying these principles here, the Court finds that, to the extent Plaintiff's complaint can be construed as alleging that Defendants negligently deprived him of his personal property, Plaintiff's allegations do not give rise to a cognizable Fourteenth Amendment due process claim. <u>See</u> <u>Daniels</u>, 474 U.S. at 328; <u>Allen</u>, 140 S. Ct. at 1004; <u>Johnson</u>, 975 F.3d at 402. Additionally, the Court finds that, to the extent Plaintiff's complaint can also be construed as alleging that Defendants intentionally deprived him of his property, Plaintiff's allegations do not give rise to a cognizable due process claim because Plaintiff acknowledges, and has submitted documentation in support of the fact, that he filed a grievance and subsequent appeals at SCI Mahanoy (Doc. No. 1-1 at 6-7, 15-19) and, thus, had an adequate post-deprivation remedy available to him. <u>See</u> <u>Hudson</u>, 468 U.S. at 533; <u>Monroe</u>, 536 F.3d at 209-10; <u>Tillman</u>, 221 F.3d at 422.

Thus, to the extent that Plaintiff's complaint can be construed as asserting a claim under the Fourteenth Amendment for the deprivation of property without procedural due process of law, the Court concludes that this claim is subject to dismissal for failure to state a claim upon which relief can be granted. Additionally, because no amendment could cure these legal deficiencies, Plaintiff will not be granted leave to amend this claim.

C.      **Plaintiff's State Law Claim for Negligence**

In the complaint, Plaintiff asserts a state law negligence claim against Defendants Evans,

Harris, Cobian, Mason, and John Doe 1, and John Doe 2 (i.e., all of the Defendants minus

Defendant Davis).  (Doc. No. 1-1 at 8.)  Defendants argue, however, that this claim should be

dismissed because it is barred by sovereign immunity under state law.  (Doc. No. 6 at 5-7.)  In

support, Defendants rely on 1 Pa. Cons. Stat. Ann. § 2310, which provides that officials and

employees of the Commonwealth of Pennsylvania, "acting within the scope of their duties, shall

continue to enjoy sovereign immunity and official immunity and remain immune from suit

except as the General Assembly shall specifically waive the immunity."  See 1 Pa. Cons. Stat.

Ann. § 2310.

However, there are ten (10) enumerated exceptions in which the Commonwealth has

waived sovereign immunity.[5]  See 42 Pa. Cons. Stat. Ann. § 8522.  These exceptions are for

negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody,

or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5)

potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store

sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  See id. §

8522 (a), (b).  Because the legislature has waived the general grant of sovereign immunity only

in these ten (10) instances, the exceptions must be strictly construed.  See Moser v. Heistand, 681

A.2d 1322, 1326 (Pa. 1996) (citation omitted).

Defendants argue that the only relevant exception listed in 42 Pa. Cons. Stat. Ann. §

8522(b) is the exception pertaining to property.  (Doc. No. 6 at 6.)  This exception provides, in

---

[5]  Defendants assert that there are nine (9) exceptions.  This is incorrect; there are ten.  See 42 Pa.
C.S. § 8522(b).

pertinent part, that the grant of sovereign immunity is not extended to negligence "claims for damages caused by: . . . [t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency[.]" See 42 Pa. Cons. Stat. Ann. § 8522(b)(3). Defendants argue, however, that this exception does not apply here because "Plaintiff does not allege his legal property was accidentally damaged. Instead, he alleges the property was intentionally taken due to his grievances and lawsuits." (Doc. No. 6 at 6.) As a result, Defendants argue that his negligence claim is barred by sovereign immunity. (Id.) The Court is unpersuaded by Defendants' reading of the complaint.

While there are allegations in the complaint that suggest intentional conduct, see (Doc. No. 1-1 at 7, ¶ 28; id. at 9, ¶ 38), there are also allegations in the complaint that sound in negligence, see (id. at 7, ¶ 31; id. at 8, ¶¶ 32-34; id. at 9, ¶¶ 37, 38). The Court finds that this alternative pleading in the complaint is permissible under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a)(3) (providing that pleadings "may include relief in the alternative or different types of relief"); Fed. R. Civ. P. 8(d)(2) (stating as follows: "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones[,]" and "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient"); Fed. R. Civ. P. 8(d)(3) (providing that "[a] party may state as many separate claims or defenses as it has, regardless of consistency"). The Court notes that alternative pleading is equally permissible under Pennsylvania law. See Tucker v. Philadelphia Daily News, 848 A.2d 113, 133 (Pa. 2004) (stating that "[t]he plaintiff is the master of his claim"); Pa. R. Civ. P. 1020(c) (providing that "[c]auses of action and defenses may be

pleaded in the alternative").

Accordingly, the Court is unpersuaded by Defendants' argument that Plaintiff's negligence claim is barred by sovereign immunity. The Court will, therefore, deny Defendants' motion on this basis, and Plaintiff will be permitted to proceed with his negligence claim.

### D.   Leave to Amend

The Court must determine whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend his Eighth and Fourteenth Amendment claims against Defendants would be futile because his allegations do not give rise to legally cognizable Eighth Amendment or Fourteenth Amendment

28

claims.  The Court cannot say, however, that it would be futile to grant Plaintiff leave to amend his complaint in order to attempt to assert allegations of Defendant Davis and Mason's personal involvement in this Section 1983 action.

Thus, the Court will grant Plaintiff leave to file an amended complaint.  Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Neither conclusory allegations nor broad allegations will set forth a cognizable claim.  Finally, and as discussed above, Plaintiff is permitted to proceed on his First Amendment retaliation claim, as well as his state law claim for negligence.  Should, however, Plaintiff wish to forego the filing of an amended complaint and simply proceed to discovery on his First Amendment retaliation claim and his state law negligence claim, then he will be permitted to file a letter on the Court's docket, stating the same.

### E.      Plaintiff's Motion Seeking the Appointment of Counsel

The final issue before the Court is whether a request for appointed counsel for Plaintiff is warranted at this time.  In his motion seeking the appointment of counsel, Plaintiff asserts that he has no money (Doc. No. 8 at 1, 2) and that he suffers from "a slew of health disorders and diseases[,]" which hinder his ability to conduct the research needed for this civil action (id. at 1).  (Id. (identifying these various disorders and diseases as follows: Crohn's; ulcerative colitis; pancolitis; IBS; G.E.R.D.; adenocarcinoma colon-rectal cancer; lung failure due to metabolically active tumor sites on lungs"); id. at 2 (asserting that he receives weekly chemotherapy injections, monthly chemotherapy infusions intravenously through a chest-port, takes twenty (20) to twenty-

five (25) different "medicines[,]" and recently had a major surgery at the hospital to remove half of his right lung.)  Finally, Plaintiff asserts that he is being housed in the RHU at SCI Mahanoy and that "the makeshift" situation that the RHU has there—presumably the law library, books, computer, and word processor he references—"is a total farce, and it's impossible to do-get any research or work completed."  (Id.)  As a result, Plaintiff requests that counsel be appointed to "help him" in this matter.  (Id.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498-99 (citations omitted).  Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress.  They are not exhaustive, nor are they each always essential").  Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157-58.

Having reviewed Plaintiff's motion, the Court concludes that the appointment of counsel is not warranted at this time.  Under 28 U.S.C. § 1915(e)(1), the Court, at its discretion, "may request an attorney to represent any person unable to afford counsel."  See id.; see also Montgomery, 294 F.3d at 498 (stating that "[i]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel[,]" but, "[n]evertheless, Congress has granted district courts statutory authority to request appointed counsel for indigent civil litigants" (citation, internal citation, and internal quotation marks omitted)).  Here, however, the Court finds that Plaintiff has not made the preliminary showing that he is indigent and unable to afford counsel.  As reflected by the Court's docket, Plaintiff has not submitted any documentation with his motion for the appointment of counsel, which would demonstrate his financial status and, specifically, that he is indigent and unable to afford counsel.  Even if the Court were to assume, however, that Plaintiff could show an inability to afford counsel, the Court would still find that the appointment of counsel is not warranted at this time.

Under the process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel.  Even acknowledging that Plaintiff's complaint has some arguable merit

in fact and law (given that the Court will deny Defendants' motion to dismiss his First Amendment retaliation and state law negligence claims), the Court still finds that Plaintiff has the apparent ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as demonstrated by the filing of his complaint, his objection to the removal of this action to federal court, and his motion seeking the appointment of counsel.  (Doc. Nos. 1, 7, 8.)  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147-48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding limited resources in the RHU at SCI Mahanoy, the Court notes that Plaintiff has since been transferred to SCI Rockview. (Doc. No. 9.)  It is unclear whether Plaintiff is still encountering such difficulties at SCI Rockview. Regardless, if Plaintiff were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.

Finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss the complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 6.)  In addition, the Court will deny Plaintiff's motion seeking the

appointment of counsel.  (Doc. No. 8.)  An appropriate Order follows.